**CHICAGO BLOWER CORP., Plaintiff,**

**v.**

**AIR SYSTEMS ASSOCIATES, INC., et al., Defendants.**

**Civ. No. 83–CV–0997–DT.**

United States District Court,
E.D. Michigan, S.D.

Nov. 7, 1985.

James J. Walsh, Frederick J. Dindoffer, Bodman, Longley & Dahling, Detroit, Mich., for plaintiff.

Allen Krass, Krass, Young & Schivley, Troy, Mich., for defendants.

James K. Robinson, Norman C. Ankers, Honigman, Miller, Schwartz & Cohn, Detroit, Mich., for the Canadian defendants Chicago Blower, Canada, CML Northern Blower and the three Canadian citizens, Christie, Lindenschmidt and Martin.

## MEMORANDUM OPINION AND ORDER

PHILIP PRATT, District Judge.

This action was filed on March 18, 1983 against Air Systems and its officers for trademark infringement and unfair competition. In February of 1985 the complaint was amended to include as defendants two Canadian corporations, Chicago Blower Canada and CML Northern Blower, and three Canadian citizens, Gordon Christie, Frederick Lindenschmidt and Stewart Martin. These additional defendants now move this court to dismiss the individual Canadian defendants for lack of personal jurisdiction and the two Canadian corporations for forum non conveniens.

The Michigan "long-arm" statute sets forth the circumstances under which nonresidents may be subjected to the personal jurisdiction of this court.

The existence of any of the following relationships between an individual or his agent and estate shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:

(1) The transaction of any business within the state.

(2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.

M.C.L.A. § 600.705. The phrase "the transaction of any business within the state" has been interpreted by Michigan courts to mean "just what it says" and includes "each and every" and comprehends the "slightest" contact. *Sifers v. Horen*, 385 Mich. 195, 199 n. 2, 188 N.W.2d 623 (1971); *Lazzaro v. Charlevoix Lakes*, 108 Mich.App. 120, 310 N.W.2d 295 (1981). The statute expands personal jurisdiction of courts to their "full potential" and has been interpreted to be co-extensive with the Due Process limitations of the Federal Constitution. *Sifers*, 385 Mich. at 198,[1] 188 N.W.2d 623.

The Due Process Clause of the fourteenth amendment permits personal jurisdiction over a defendant in any state with which the defendant has "certain minimum contacts ... such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). A court has not exceeded its powers where the defendant has

---

1. Where state courts interpret their long-arm statute to be co-extensive with the scope of personal jurisdiction permitted by the due process clause of the United States Constitution, a federal court is not bound to follow the state courts' interpretation of the United States Constitution, but rather is free to apply federal law. *Empire Abrasive Equipment v. H.H. Watson*, 567 F.2d 554 (3d Cir.1977); *Simkins Corp. v. Gourmet Resources Intern.*, 601 F.Supp. 1336 (E.D.Pa. 1985).

"purposefully availed itself of the privilege of conducting activities within the forum state," *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958), or has "purposefully directed" his activities at the forum state. *Keeton v. Hustler Magazines, Inc.,* 465 U.S. 770, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984). In judging minimum contacts, a court properly focuses on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977).

The Supreme Court's latest pronouncement on the limits of due process held that a Florida District Court had personal jurisdiction over a Michigan franchisee even though the defendant had never set foot in Florida and the only contacts with the forum state were by telephone calls and letters. *Burger King Corp. v. Rudzewicz,* —— U.S. ——, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The court held that the defendant "purposefully availed" himself of the forum by entering into a franchise agreement with the Florida plaintiff. The contract was to be governed by Florida law, with policies and major disputes to be handled by the plaintiff's Miami headquarters. When disputes arose between the parties, defendant dealt directly with the Florida office, though he never physically went to Florida.

The court first reviewed some of the policies behind an expansive reading of the Due Process Clause:

> And with respect to interstate contractual obligations, we have emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities.

*Burger King,* —— U.S. ——, 105 S.Ct. at 2182. The Court went on to address the equities involved in jurisdictional disputes involving interstate contract cases.

> Moreover where individuals 'purposefully derive benefit' from their interstate activities [citation omitted], it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed.

*Id.,* 105 S.Ct. at 2183. The court then set forth the standards by which the trial court may determine if the defendant has "purposefully availed" himself of the forum state.

> This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' of 'attenuated' contacts, [citation omitted], or of the "unilateral activity of another party or a third person," [citation omitted]. Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State. [Citations omitted]. Thus, where the defendant 'deliberately' has engaged in significant activities within a State, [citation omitted], or has created 'continuing obligations' between himself and residents of the forum, [citation omitted], he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Id.,* 105 S.Ct. at 2183–2184.

The defendant in *Burger King* argued that personal jurisdiction could not be exercised against him in Florida because he never entered the forum state and all contacts with Florida had been by mail or telephone from Michigan. The Supreme Court emphatically rejected the notion that physical presence was a prerequisite for the exercise of personal jurisdiction.

> Jurisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State. Although territorial presence

frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there. [Citations omitted].

*Id.* 105 S.Ct. at 2184. The court did, however, point out that it was not establishing a "talismanic jurisdictional formula," and that each case should be directed on its own facts. *Id.* 105 S.Ct. at 2189. It noted that an interstate transaction may still be so "random," "fortuitous" or "attenuated" so as to make the exercise of personal jurisdiction in a given case unreasonable.

In the case at bar, the contacts of the defendants Christie, Lindenschmidt and Martin with the State of Michigan were not random or fortuitous. The affidavit and deposition testimony of Lindenschmidt indicates continuous business contact with the Michigan defendants by telephone and mail. One outcome of these communications is the fact that the Michigan defendants are now the sales representatives of defendant CML Northern, the Canadian corporation of which Lindenschmidt is an officer and 20% owner. The affidavit and deposition testimony of Mr. Christie, who is Chief Executive Officer and 40% owner of CML Northern, reveals similar contacts with Michigan. Christie's contacts were more extensive than Lindenschmidt's in that he visited Michigan on two occasions in 1984, one of those being a trip to Ford Motor Company to discuss an order Ford had placed with the defendants.

█ It is clear that both Lindenschmidt and Christie "purposefully availed" themselves of the opportunity to do business in Michigan and that these contacts were neither random nor fortuitous. They had numerous contacts with a Michigan company that subsequently became their sales representative. The fact that this Michigan company, Air Systems, has handled approximately 95% of CML Northern's United States sales and 20% of CML's total sales indicates that neither the contact, nor the business relationships established in Michigan by Christie and Lindenschmidt were "attenuated."

█ Martin's connections with Michigan, while not as extensive as those of Christie and Lindenschmidt, are sufficient to support this court's exercise of personal jurisdiction over him. He is a 40% owner of CML Northern, and though he did not participate in day-to-day operations, was aware of the dispute with Chicago Blower. He informed the sales representatives of Chicago Blower of Canada that he would put his personal fortune to protect the company, which he knew was involved in a dispute related to the Michigan distributor. As president of his family holding company, Rossmere, he signed an indemnity agreement whereby Chicago Blower of Canada's legal expenses would be paid. He was also present at a meeting with Scheule and McVean of Air Systems who own and operate this Michigan defendant, and are individual defendants themselves, wherein he was informed that litigation was expected. Lindenschmidt testified that Chicago Blower of Canada has paid Air Systems' legal expenses on a Rossmere account pursuant to an indemnity agreement. The agreement to pay the legal fees arising out of a dispute that includes a Michigan company as a major figure indicates that Martin could "reasonably anticipate being haled into court" in Michigan.

Defendants argue that even if they have "minimum contacts" with Michigan, personal jurisdiction cannot be exercised over them because they acted in their corporate, not individual capacity. This is the doctrine known variously as the "corporate/fiduciary shield" doctrine, which states that personal jurisdiction can only be exercised over those who act in their individual, not

corporate, capacity. *Forsythe v. Overmyer,* 576 F.2d 779 (9th Cir.1978); Sponsler, Jurisdiction Over the Corporate Agent: The Fiduciary Shield, 35 *Wash. & Lee L.Rev.* 349 (1978). There is disagreement as to the applicability of this doctrine. Some courts have held that it is a rule of statutory construction used in interpreting the intended scope of a state's long-arm statute. *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899 (2d Cir.1981); *Soltex Polymer Corp. v. Fortex Industries,* 590 F.Supp. 1453 (E.D.N.Y.1984); *Quinto v. Legal Times of Washington, Inc.,* 506 F.Supp. 554 (D.D.C.1981). This doctrine has been persuasively criticized as giving corporate officers jurisdictional immunity where substantive corporate law would subject them to liability. *Columbia Briargate Co. v. First Nat. Bank,* 713 F.2d 1052 (4th Cir.1983), *cert. denied,* 465 U.S. 1007, 104 S.Ct. 1001, 79 L.Ed.2d 233 (1984). Michigan courts have not applied this doctrine to its long-arm statute, having extended personal jurisdiction as far as is allowed by the due process constraints of the Constitution.

Several courts have held that the fiduciary shield doctrine is a constitutional principle, applied to determine whether the exercise of jurisdiction comports with fair play and substantial justice. *Allen v. Toshiba Corp.,* 599 F.Supp. 381 (D.N.M.1984); *K Mart Corp. v. Knitjoy Mfg., Inc.,* 534 F.Supp. 153 (E.D.Mich.1981); *Parliament Import Co. v. Gibson Wine Co., Inc.,* 537 F.Supp. 75 (E.D.Pa.1982). The Sixth Circuit has in dictum indicated its doubts about the constitutionality of allowing a state long-arm statute to confer jurisdiction over individuals whose sole contact with the forum was in their corporate, not individual, capacity.

> But even if the statute was construed to permit suit in Ohio we would still be faced with grave questions as to its constitutionality. We have serious doubt whether the activities of the corporate officers in behalf of the corporation set forth in Weller's affidavit are sufficient so as to make it reasonable and just, consistent with traditional notions of fair play, and in conformity with due process requirements of the Fourteenth Amendment that individuals be subjected to suit in Ohio to enforce personal liability arising out of such activities. [Citations omitted.] If such suits against officers of national corporations were permitted, the individuals could be sued in every state of the union whenever they make telephone calls or write letters to a customer who claims that they constitute misrepresentation.

*Weller v. Cromwell,* 504 F.2d 927, 931 (6th Cir.1974). While the Supreme Court has never expressly used the term "fiduciary shield," it has had occasion to address the issues involved.

The "fiduciary shield" doctrine was recently argued before the Supreme Court in a libel case where a reporter and editor from Florida were sued in a California court by a California plaintiff. The Court refused to allow the individual defendants to avoid jurisdiction by hiding behind the "corporate veil" of their employer.

> Petitioners argue that they are not responsible for the circulation of the article in California. A reporter and an editor, they claim, have no direct economic stake in their employer's sales in a distant State. Nor are ordinary employees able to control their employer's marketing activity. The mere fact that they can "foresee" that the article will be circulated and have an effect in California is not sufficient for an assertion of jurisdiction. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. [286] at 295, 100 S.Ct. [559] at 566 [62 L.Ed.2d 490 (1980)]; [other citations omitted].
>
> ... Petitioners liken themselves to a welder employed in Florida who works on a boiler which subsequently explodes in California. Cases which hold that jurisdiction will be proper over the manufacturer, [citations omitted], should not be applied to the welder who has no control over and derives no direct benefit from his employer's sales in that distant State. Petitioner's analogy does not wash. Whatever the status of their hypothetical

welder, petitioners are not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions were expressly aimed at California.... Under the circumstances, petitioners must 'reasonably anticipate being haled into court there' to answer for the truth of the statements made in their article. [Citations omitted]. An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause injury in California. Petitioners are correct that their contacts with California are not to be judged according to their employer's activities there. On the other hand, their status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum state must be assessed individually. [Citation omitted]. In this case, petitioners are primarily participants in an alleged wrongdoing intentionally directed at a California resident, and jurisdiction over them is proper on that basis.

*Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984).

In another case decided that same day, the Court was even more emphatic in its rejection of automatic jurisdictional immunity for corporate officers.

In addition to Hustler Magazine, Inc., Larry Flint, the publisher and owner of the magazine, and L.F.P., Inc., Hustler's holding company, were named as defendants in the District Court. It does not of course follow from the fact that jurisdiction may be asserted over Hustler Magazine, Inc., that jurisdiction may also be asserted over either of the other defendants. In *Calder v. Jones, post,* at 6, we today reject the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity. But jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him.... Each defendant's contacts with the forum state must be assessed individually.

*Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 104 S.Ct. 1473, n. 13, 79 L.Ed.2d 790 (1984). The *Calder* decision has been interpreted by almost all courts as holding that where the state long-arm statute extends to the limit of due process, the exercise of jurisdiction over corporate officers who individually have had minimum contacts with the forum is permissible, even if those contacts were made in their capacity as corporate officers. *Donovan v. Grim Hotel,* 747 F.2d 966 (5th Cir.1984); *Thomson McKinnon Securities v. Hamiltonian Industries,* 610 F.Supp. 5 (S.D.N.Y.1985); *Hudson v. Moore Business Forms, Inc.,* 609 F.Supp. 467 (N.D.Cal.1985); *Stuart v. Federal Energy Systems, Inc.,* 596 F.Supp. 458 (D.Va.1984); *Nordic Bank PLC v. Trend Group, LTD,* 619 F.Supp. 542, (S.D.N.Y. 1985); *Chase v. Pan-Pacific,* 617 F.Supp. 1414 (D.D.C.1985) *Copiers Typewriters Calculators v. Toshiba Corp.,* 576 F.Supp. 312 (D.Maryland 1983) [decided before *Calder.*]

■ In the instant case, the court has already found that sufficient minimum contacts exist between the individual defendants and the forum to allow it to exercise personal jurisdiction over them. Michigan courts have not adopted the fiduciary shield doctrine, and due process does not command this court to apply it in the absence of state law requirements. The argument for exercising jurisdiction over the individual defendants in this case is stronger than that in *Calder.* As sole owners of the Canadian corporate defendants whose actions are at issue here, they were the architects of the marketing strategy that resulted in the activity within the forum state which is the subject matter of this suit. They certainly are not being charged with "untargetted negligence," as it was their personal contacts with the forum that in part led to this suit. The individual defendants were "primary participants in an alleged wrongdoing intentionally aimed" at the forum state, making jurisdiction over them proper.

■ Both the individual and corporate Canadian defendants contend that even if

this court does have personal jurisdiction over them, they should be dismissed pursuant to the doctrine of forum non conveniens. In applying this doctrine, the court may consider ease of access to proofs, availability of compulsory process, the cost of obtaining attendance of witnesses, and "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1053 (1946). It is also appropriate to consider the forum's familiarity with the applicable law, "rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Id.,* 330 U.S. at 509, 67 S.Ct. at 843.

This court should be cautious in exercising its discretion to dismiss pursuant to the doctrine of forum non conveniens. "But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.,* 330 U.S. at 508, 67 S.Ct. at 843. An even stronger burden has been placed on defendants where, as in the instant case, a foreign defendant is attempting to deny a United States plaintiff access to a United States forum.

> When such circumstances are present, the movant's burden becomes considerable. To establish that the relief being sought—dismissal—is warranted, the defendant in essence must show not only that the *proposed forum* would be a significantly more convenient one, but also that to subject it [the defendant] to trial in the forum at issue would be manifestly unjust, vexatious and/or oppressive.

*Aigner v. Bell Helicopters, Inc.,* 86 F.R.D. 532, 543 (N.D.Ill.1980). It has also been said that a court should require "positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest before exercising any such discretion to deny a citizen access to the courts of this country." *Leasco Data Processing Corp. v. Maxwell,* 468 F.2d 1326, 1344 (2d Cir.1972); *See, Shepard Niles Crane & Hoist Corp. v. Fiat, S.p.A.,* 84 F.R.D. 299 (S.D.N.Y. 1979) [granting motion to dismiss]; *Reavis v. Gulf Oil Corp.,* 85 F.R.D. 666 (D.Del. 1980); *Ionescu v. E.F. Hutton & Co. (France) S.A.,* 465 F.Supp. 139 (S.D.N.Y. 1979) [granting motion to dismiss].

The Canadian defendants have not demonstrated that a material injustice would result if this court fails to dismiss them from this action. There is certainly a nexus between the defendants and this forum. Their United States headquarters is located in Michigan. Deposition testimony indicates that 95% of their U.S. sales and 20% of their total sales are derived from the activity of their Michigan sales representative, a defendant in this action. The individual defendants had numerous contacts with Michigan by mail and telephone setting up the distribution network with the Michigan defendant that is the subject of this litigation. The bulk of this suit involves the application of United States patent law, a task that a United States court is better suited to than a Canadian court. This is not one of those rare cases requiring dismissal pursuant to the doctrine of forum non conveniens.

Defendant's motions to dismiss due to absence of personal jurisdiction, or in the alternative for forum non conveniens, are DENIED.

IT IS SO ORDERED.