Lawrence R. BRINK, Plaintiff,

v.

ECOLOGIC, INC. and Stephen V. Lee, Defendants.

Civil Action No. 97–40209.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 14, 1997.

---

Henry E. Mistele, Robert J. Figa, Troy, MI, for Plaintiff.

**960**

Davi L. Hirsch, Chicago, IL, for Defendant.

### MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS FOR LACK OF IN PERSONAM JURISDICTION AND GRANTING MOTION TO TRANSFER VENUE

GADOLA, District Judge.

On June 17, 1997, plaintiff, Lawrence R. Brink, instituted this action against defendants Ecologic, Inc. and Stephen V. Lee, alleging copyright infringement in violation of 17 U.S.C. § 101 *et seq.*, as well as breach of contract and unjust enrichment. Presently before this court is defendants' motion to dismiss for lack of *in personam* jurisdiction or in the alternative to transfer venue, which was filed on August 18, 1997. For the following reasons, defendants' motion to dismiss will be denied, but defendants' motion to transfer venue will be granted.

### FACTS

Ecologic, Inc. was incorporated in 1992 to design and manufacture university residence hall furniture. Ecologic's furniture is constructed from Ecolumber,TM an extruded material made of recycled milk cartons. Ecologic's President, Stephen V. Lee ("Lee"), designed and created the prototypes of the furniture Ecologic sells and has sold. Initially, Lee built Ecologic's furniture in his garage. In 1994, Ecologic opened a factory in Illinois where Ecologic manufactured its furniture from prototypes Lee built.

In 1991, Lee met plaintiff, Lawrence R. Brink, on a sailboat in Illinois. Plaintiff is an architect who does business as "Lawrence Brink and Associates" in Ann Arbor, Michigan. Lee and plaintiff discussed Lee's furniture designs and the general business of Ecologic.

Lee had aspirations that Ecologic would grow in sales to a point where Ecologic would need to mass produce its furniture. To prepare for this possibility, Lee asked plaintiff if he could prepare shop drawings

from prototypes Lee created and designed. Brink delivered the first drawings to Lee in Illinois in 1993. While he was in Illinois, plaintiff inquired how he was to be paid. Brink was verbally advised that he would be paid four percent of Ecologic's gross sales or net profits,[1] if any, from future sales of Ecologic's furniture for the drawings he had prepared and would prepare for Ecologic. In 1994, Lee allegedly "upped the ante," so to speak, promising to give plaintiff not only 4% of Ecologic's gross sales or net profits, but also 10% of Ecologic's stock.

In July, 1997, plaintiff instituted this action claiming that defendants Lee and Ecologic used his copyrighted furniture designs[2] without paying him a percentage of Ecologic gross sales and stock as promised. Shortly thereafter, on August 18, 1997, defendants Ecologic and Lee filed the instant motion contending that this action should be dismissed, or in the alternative transferred to the Northern District of Illinois.

### ANALYSIS

#### I. Defendants' Motion to Dismiss for Lack of In Personam Jurisdiction

Defendants' first argument is that this court should dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(2) because it lacks *in personam* jurisdiction over defendants. This motion will be denied.

■ Plaintiff bears the burden of establishing *in personam* jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir.1991). To satisfy this burden, "plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has [personal] jurisdiction." *Id* . (citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir.1974)).

■ Where the jurisdictional issue is decided pursuant to Federal Rule of Civil Procedure 12(b)(2) without an evidentiary hearing and solely on the basis of written

---

**1.** There is a dispute as to whether Lee promised to pay plaintiff four percent of gross sales or four percent of net profits. Lee insists that he promised to pay plaintiff four percent of net profits. Plaintiff maintains that Lee promised to pay him four percent of gross sales.

**2.** In October, 1996, plaintiff had his drawings copyrighted as Ecologic I, II and III.

materials, the plaintiff is only required to make a *prima facie* showing of jurisdiction. *Theunissen*, 935 F.2d at 1458. The pleadings are considered in a light most favorable to the plaintiff and the court does not weigh controverting assertions of the party seeking dismissal. *Id.* at 1459.

 In diversity cases, such as the instant case, courts look to the law of the forum state to determine whether personal jurisdiction exists. *Nationwide Mutual Ins. Co. v. Tryg Int'l. Ins. Co., Ltd.*, 91 F.3d 790, 793 (6th Cir.1996). Under Michigan law, the determination of *in personam* jurisdiction over a nonresident defendant requires a two-part analysis. *Jeffrey v. Rapid American Corp.*, 448 Mich. 178, 529 N.W.2d 644 (1995). First, plaintiff must demonstrate that the exercise of *in personam* jurisdiction is consistent with the requirements of Due Process under the Fourteenth Amendment of the Constitution of the United States. *Id., 529 N.W.2d at 648–49.* Second, plaintiff must show defendants fall within the reach of Michigan's long-arm statutes. *Id.* The analysis "begin[s] by examining the relevant Due Process considerations, recognizing that a defect of this type would foreclose the exercise of personal jurisdiction even where a properly construed provision of the long-arm statute would permit it." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).[3]

## A. Defendant Lee

 In this case, plaintiff asserts that this court has specific (a.k.a. "limited") *in personam* jurisdiction over defendant Lee pursuant to Section 600.705 of Michigan Compiled Laws, which provides as follows:

The existence of any of the following relationships between an individual and his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal

judgments against the individual or his representative arising out of an act which creates any of the following relationships:

(1) The transaction of any business within the state.

(2) The doing or causing of any act to be done, or consequences to occur, in the state resulting in an action for tort.

Basically, this statute confers "on the state courts that maximum scope of personal jurisdiction permitted by the Due Process Clause of the Fourteenth Amendment." *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1236 (6th Cir.), *cert. denied,* 454 U.S. 893, 102 S.Ct. 388, 70 L.Ed.2d 207 (1981). *See also Lazzaro v. Charlevoix Lakes*, 108 Mich.App. 120, 310 N.W.2d 295 (1981).

The seminal Supreme Court case defining the maximum scope of the Fourteenth Amendment's Due Process Clause is *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In *International Shoe,* the Supreme Court held that to satisfy the Due Process requirement, plaintiff must demonstrate that the defendant has sufficient "minimum contacts" with the forum state (i.e., State of Michigan) so that maintenance of the lawsuit does not offend "traditional notions of fair play and substantial justice." *International Shoe v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

In adjudging minimum contacts, a court properly focuses on "the relationship among the defendant, the forum, and the litigation." *Chicago Blower Corp. v. Air Systems Associates,* 623 F.Supp. 798 (E.D.Mich.1985) (citing *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977)). The defendant must have purposefully availed himself of the privilege of conducting activities in the forum state such that he invoked the benefits and protections of its law. *Hanson v. Denckla,* 357 U.S., 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Defendant's activities in the forum state must be of the quality and

---

**3.** In deciding whether the Due Process Clause permits this court to exercise personal jurisdiction over the defendants, this court is not bound to follow the State court's interpretation of the Due Process Clause, but rather is free to apply federal law. *Chicago Blower Corp. v. Air Systems Associates,* 623 F.Supp. 798, 800, n. 1 (E.D.Mich.

1985). Hence, this court will rely on federal cases in determining whether Due Process is satisfied here. This court will not rely on the plethora of Michigan court cases cited by plaintiff wherein the reach of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States is construed.

nature that he would anticipate being haled into court there. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Defendant's relationship with the forum state must be more than "random, fortuitous, or attenuated." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). It is the defendant's contacts, and not the unilateral activity of plaintiff, that bears significance. *Id.* at 474, 105 S.Ct. at 2183.

Consistent with *International Shoe* and its progeny, the Sixth Circuit has developed three criteria (hereinafter the "*Mohasco* criteria") for use in evaluating whether specific *in personam* jurisdiction constitutionally can be exercised over any particular defendant.

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing consequence in the forum state. Second, the cause of action must arise from defendant's activities there. Finally, the acts of the defendant or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over defendant reasonable.

*LAK, Inc. v. Deer Creek Enterprises,* 885 F.2d 1293, 1299 (6th Cir.1989), *cert. denied,* 494 U.S. 1056, 110 S.Ct. 1525, 108 L.Ed.2d 764 (1990) (citing *Southern Machine Co. v. Mohasco Indus., Inc.,* 401 F.2d 374 (6th Cir. 1968)).

■ Here, plaintiff has satisfied the first *Mohasco* criteria because he has made a *prima facing* showing that defendant Lee's contacts with Michigan were more than "random," "fortuitous" and "attenuated" and that Lee purposefully availed himself of the privilege of acting in the forum state or causing consequence in the forum state. According to plaintiff, in furtherance of the parties' relationship, and in order to discuss plans, review designs and evaluate cost factors, Lee consciously and deliberately visited plaintiff in Michigan at least twenty-two times [4] over a five year period. In addition to visiting plaintiff, Lee, so plaintiff avers, sent numerous faxes and made numerous phone calls to him in Michigan regarding the work plaintiff performed for Lee, which forms the crux of the case.[5] Certainly, by entering such a significant business relationship with a Michigan-based architect, Lee should have anticipated being haled into court in Michigan for conduct arising out of that relationship and he should have foreseen that his dealings would have profound consequences in Michigan and a realistic impact on Michigan commerce.[6] *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183; *LAK,* 885 F.2d 1293, 1300 (1989) ("The Supreme Court has emphasized, with respect to interstate contractual obligations that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the

**4.** Plaintiff avers that between 1991 and 1996, he met with Lee to discuss plans and review designs and cost factors at least fifteen times in Ann Arbor, Michigan. Plaintiff further avers that he met with Lee on business four times in Ferrysburg, Michigan and three times at trade shows in Ypsilanti, Michigan. Defendant argues that this court should disregard such averments of plaintiff because plaintiff does not provide the precise or approximate dates which Lee allegedly entered Michigan for such reasons. This court will not disregard such averments by the plaintiff. For purposes of making a *prima facie* showing of jurisdiction, plaintiff need not provide the specific dates which Lee allegedly entered Michigan for such business purposes.

**5.** Defendant Lee argues that plaintiff has not come forward with evidence showing that Lee made transmittals and phone calls to plaintiff involving matters relating to this action. Yet, plaintiff has come forward with such evidence. To his brief in response to defendants' motion to dismiss for lack of personal jurisdiction or in the alternative to transfer venue, plaintiff appended

various fax cover sheets which reveal that defendant Lee (and others at Ecologic) sent faxes to plaintiff, asking plaintiff for suggestions on various furniture designs and soliciting plaintiff's advice on ways to secure new customers for Ecologic.

**6.** Defendants argue that Lee was not in Michigan approximately 22 times for business purposes between 1991 and 1996. Defendants further contend that plaintiff has not come forward with *specific facts* showing that Lee was in Michigan for business reasons approximately 22 times over a five year period because Brink's affidavit does not provide the dates which Lee allegedly entered Michigan for business purposes. In this court's opinion, the specific dates on which Lee allegedly entered Michigan for business purposes need not be provided. It is sufficient that plaintiff merely state that Lee entered Michigan *at least fifteen* times to discuss plans, review designs and evaluate cost factors.

other State for the consequences of their activities.' ").

Defendant Lee insists that the first *Mohasco* criterion is not met here. Lee argues that the case *sub judice* is similar to *LAK*, 885 F.2d 1293, in which the court found no purposeful availment. In this court's opinion, the instant case is highly distinguishable from *LAK*.

In *LAK*, Beznos Realty Investment Company ("Beznos Realty"), a Michigan limited partnership, and predecessor in interest to plaintiff Lak, Inc., a Michigan corporation, unsolicitedly contacted Deer Creek Enterprises ("Deer Creek"), an Indiana general partnership formed by two Indiana residents Mark and Hart Hasten, in November, 1983, inquiring about a valuable tract of land in Florida known as the "Cypress parcel." Thereafter, representatives of Beznos Realty, who were from Michigan, met in Florida several times with representatives of Deer Creek, who were from both Florida and Indiana.

On February 13, 1984 the attorney for Deer Creek dispatched a draft purchase agreement to a principal of Beznos Realty, Harold Beznos. Beznos, gave the draft agreement to his lawyer in Detroit, Michigan, and then the lawyers for Beznos Realty and Deer Creek proceeded to communicate a number of times over the telephone to finalize the draft agreement.

On February 29, 1997, the finalized purchase agreement was signed by Harold Beznos in Michigan, and sent to Mark Hasten in Indiana, for him to sign there. Hasten signed the agreement in Indiana on March 2, 1984, making that agreement legally binding. The agreement did not require either Deer Creek or Beznos Realty to take any action in the State of Michigan. Nor did it provide for a continuous relationship between Beznos and Deer Creek.[7]

Shortly before the purchase agreement was finalized, the City of Deerfield Beach rejected a 540-unit site plan at the Cypress Parcel. Beznos Realty requested that Deer Creek reduce the purchase price, but it refused.

Two weeks before the closing date, Lak filed suit in United States District Court for the Eastern District of Michigan claiming that Deer Creek breached the purchase agreement by repudiating covenants and warranties that 540 units would be available on the Cypress parcel. Deer Creek sought monetary damages and specific performance compelling transfer of the Cypress Parcel at a price dependent upon the number of units approved by the City of Deerfield Beach, Florida.

Deer Creek moved to dismiss the action for lack of personal jurisdiction. The district court denied the motion, and the case went to trial. The jury awarded Lak specific performance, but denied monetary damages. Deer Creek appealed. On appeal, the Sixth Circuit held that Michigan lacked personal jurisdiction over Deer Creek. Specifically, the court found that Deer Creek had not purposefully availed itself of the privileges of conducting business in Michigan.

The Sixth Circuit provided several reasons for its holding that Michigan lacked personal jurisdiction over Deer Creek. For one, the court found that Deer Creek's only contacts with Michigan were phone calls placed by Deer Creek representatives, primarily Deer Creek's attorney, to Beznos Realty's representatives. The phone calls were solely the result of Beznos Realty's action and for their convenience. After all, it was Beznos Realty that had reached out to Deer Creek regarding the sale of the Cypress Parcel; Deer Creek did not reach out to Beznos Realty in Michigan. Another reason that the Sixth Circuit found personal jurisdiction lacking was that no Deer Creek representative ever set foot in Michigan. Indeed, the purchase negotiations for the Cypress Parcel commenced in Florida and ripened in Indiana. The Sixth Circuit also found it significant that the purchase agreement did not create any continuing relationship with Michigan. On the contrary, the contract was a "one-shot affair" between Beznos Realty, a Michigan limited partnership, and Deer Creek, an Indiana general partnership. *Id.* at 1302. In short, the Sixth Circuit found that defendant Deer Creek did not purposefully avail

---

7. The contract had a choice of law clause select- ing Florida law as controlling.

itself of the benefits and privileges of acting in the forum state because plaintiffs had made "no showing that the object of Deer Creek's contacts with Michigan was to have 'ongoing,' or 'far-reaching,' or 'continuous,' or 'substantial' consequences in the Michigan real estate market." *Id.* at 1303.

When the evidence is construed in a light most favorable to plaintiff, this case is highly distinguishable from *LAK.* Unlike the defendant in *LAK,* the defendant in this case (i.e., Lee) solicited plaintiff's business and thereafter made numerous deliberate trips to Michigan on matters related to this lawsuit. Moreover, the instant case is different from *LAK* in that in *LAK* the contract was a "one-shot affair," but in this case, the dealings and alleged contract were continuous in nature. Specifically, the parties in this case contemplated an ongoing relationship whereby plaintiff, a Michigan architect, would continue to generate sales and draft designs in Michigan for Ecologic, an Illinois corporation.

In addition to finding the first *Mohasco* criterion satisfied, this court finds the second *Mohasco* criterion, (i.e., that plaintiff's claims arise from defendant Lee's activities in Michigan), met. While it is true that some of the activities relevant to plaintiff's copyright, breach of contract and unjust enrichment claims took place in Illinois (i.e., Lee's alleged use of plaintiff's copyrighted drawings, Lee's alleged sale of products manufactured from plaintiff's copyrighted drawings), other activities relevant to plaintiff's claims occurred in Michigan. For instance, construing the evidence in a light most favorable to plaintiff, the evidence is that Lee traveled to Michigan on numerous occasions to review the copyrighted drawings that plaintiff made in Michigan. Lee also sent numerous items of correspondence into the State of Michigan to solicit plaintiff's advice regarding furniture design. These Michigan contacts are related to the action and are sufficient to enable Michigan courts to exercise *in personam* jurisdiction over defendant Lee.

■ The final *Mohasco* criterion is that jurisdiction must be "reasonable." This court finds that this requirement is present. Having Lee litigate in Michigan, a forum which, according to Lee, plaintiff previously traveled at least 22 times on business related to this action, is not unreasonable. Michigan is not far from Lee's home state of Illinois and thus it is not an overwhelming burden for him to journey here. Furthermore, at least with respect to the federal claim, which according to the defendants is the crux of plaintiff's lawsuit, there will be no harm in having a Michigan court, as opposed to an Illinois court, decide it. The law pertaining to this federal claim is uniform across state lines.[8]

### B. Defendant Ecologic

Having found that Michigan courts have *in personam* jurisdiction over defendant Lee, the next question is whether Michigan courts have *in personam* jurisdiction over defendant Ecologic. Plaintiff argues that this court can exercise both general and specific *in personam* jurisdiction over Ecologic. Plaintiff contends that this court can exercise *general in personam* jurisdiction over Ecologic pursuant to Michigan Compiled Laws 600.711,[9] and *specific in personam* jurisdiction over Ecologic pursuant to Michigan Compiled Laws 600.715.[10]

8. Clearly, Illinois has personal jurisdiction over defendant Lee. Yet, this does not preclude Michigan from exercising personal jurisdiction over him too. More than one forum can have personal jurisdiction over a particular defendant.

9. Section 600.711 of the Michigan Compiled Laws provides for general jurisdiction if any of the following exist:

(1) The corporation was incorporated under Michigan law.
(2) The corporation consented to the court's jurisdiction.
(3) The corporation carries on a continuous and systematic part of its general business in Michigan.

10. Section 600.715 of the Michigan Compiled Laws allows the court to exercise limited personal jurisdiction against a corporation arising out of the acts which create any of the following relationships:

(1) The transaction of any business within the state.
(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.
(3) The ownership, use, or possession of any real or tangible personal property situated within the state.
(4) Contracting to insure any person, property, or risk located within this state at the time of contracting.

This court will not reach the issue of whether Michigan has general *in personam* jurisdiction over Ecologic because this court finds that it has limited jurisdiction over Ecologic for the same reasons that it has such jurisdiction over Lee.[11]

## II. Whether Venue is Proper in the Eastern District of Michigan

Having found that Michigan courts have *in personam* jurisdiction over both defendants, the next question is whether Michigan is the proper venue. Venue with regard to each of plaintiffs' three claims will be examined separately.

### A. Copyright Infringement

■ Venue for plaintiff's claim of copyright infringement is governed by 28 U.S.C. § 1400(a), which provides:

> Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or the exclusive rights in mask works may be instituted in the district in which the defendant or his agent resides or may be found.

"The general rule of construction of § 1400(a) is that a defendant or his agent 'may be found' in any district in which he is amenable to personal jurisdiction or wherever he may validly be served with process." *Mihalek Corp. v. Michigan*, 595 F.Supp. 903, 906 (E.D.Mich.1984), *aff'd*, 814 F.2d 290 (6th Cir.1987). Having found that Michigan has personal jurisdiction over defendants Lee and Ecologic, this court also finds that a Michigan venue is proper for plaintiff's copyright claim against Lee and Ecologic.

### B. Breach of Contract and Unjust Enrichment

Venue for plaintiff's breach of contract and unjust enrichment claims are governed by 28 U.S.C. § 1391(b), which provides:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

■ The criteria prescribed in subparts (1) and (3) are inapplicable. Thus, in order for venue to be appropriate in Michigan, plaintiff must show that Michigan is the judicial district wherein the substantial part of the events or omissions giving rise to the claims of breach of contract and unjust enrichment occurred. Plaintiff cannot establish this. A substantial part of the events underlying plaintiff's state law claims did not occur in Michigan; rather, they occurred in Illinois. For instance, defendants allegedly used the drawings for which they did not compensate plaintiff in Illinois. The meeting where Lee allegedly promised to pay plaintiff 4% of Ecologic's gross sales or net profits occurred in Illinois.[12] The bulk of Ecologic's sales or profits, of which plaintiff was to be paid a percentage, were generated in Illinois.[13] In

---

(5) Entering into a contract for services to be performed or for material to be furnished in the state by defendant.

**11.** This court seriously doubts that general *in personam* jurisdiction over Ecologic is present here. Ecologic has no manufacturing plants or administrative offices in Michigan. It has only made one meager sale to a Michigan customer for the nominal amount of $1,739. While it actively solicits Michigan clients, this alone is not sufficient for a finding of general *in personam* jurisdiction.

The Supreme Court has hinted, however, that those contacts relevant to the determination of general *in personam* jurisdiction may be looked at when evaluating whether there is specific *in personam* jurisdiction over a given defendant. Here, the general contacts do seem to bolster a finding of specific *in personam* jurisdiction. Ecologic has purposefully solicited activities in Michigan and it considers it's "GEOGRAPHIC AREA" of marketing to be the entire nation, including Michigan. It buys drawer slides for the products it manufactures from Vogt Industries, Inc.—a corporation located in Grand Rapids, Michigan. It had another Michigan company located in Ferrysburg, Michigan produce some prototypes of its furniture and provide tops for its furniture.

**12.** *See supra* note 1.

**13.** During the time period alleged in the Complaint, it is uncontroverted that Ecologic made only one nominal sale of its products in the State of Michigan to Central Michigan University in 1995 for $1,739.00.

short, Michigan is not the proper venue for plaintiff's breach of contract and unjust enrichment claims because a substantial part of the events or omissions underlying the claim did *not* occur there. Accordingly, this court will transfer those claims pursuant to 28 U.S.C. § 1406(a) to the forum where they did occur, that being the Northern District of Illinois.[14]

### III. Whether Plaintiff's Copyright Claim Should be Transferred to the Northern District of Illinois

■ Although Michigan is a proper venue for plaintiff's copyright claim, this court nevertheless finds that said claim should be transferred to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). That section provides:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil case to another district or division where it might have been brought.

The factors to be considered in ruling on a motion for transfer of venue include: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice. *Helder v. Hitachi Power Tools, USA, Ltd.,* 764 F.Supp. 93, 96 (E.D.Mich.1991).

■ Application of the aforementioned factors leads this court to conclude that the copyright claim should be transferred with the other two claims to the Northern District of Illinois. First, the alleged infringing conduct occurred in Illinois, where Ecologic allegedly used the drawings, where Ecologic manufactures its products and where the greater portion of Ecologic's sales occur. Second, the vast majority of the witnesses with knowledge of Ecologic's business operations, manufacturing activities, furniture designs, sales and marketing activities are in the Northern District of Illinois, and the inconvenience and cost of bringing them to Flint, Michigan (in excess of 100 miles from the Northern District of Illinois) is great.[15] Third, the bulk of relevant proofs (i.e., Ecologic's business records, the drawings alleged to have been used improperly by Ecologic, the sales records, the corporate stock) are in Illinois. For all these reasons, this court finds that justice would be served by transferring the copyright claim to the Northern District of Illinois.

In sum, this court finds that defendants Lee and Ecologic are subject to *in personam* jurisdiction in Michigan. This court also finds that venue is proper in Michigan for plaintiff's copyright claim, but will nevertheless transfer that claim to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). This court further finds that Michigan is not a proper venue for plaintiff's claims of unjust enrichment and breach of contract and therefore, will transfer these claims to the Northern District of Illinois pursuant to 28 U.S.C. § 1406(a).

### ORDER

IT IS HEREBY ORDERED that defendants' motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) is DENIED.

---

14. Title 28, Section 1406(a) of the United States Code provides:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

15. Plaintiff has listed a number of witnesses who reside in Michigan and who plaintiff intends on calling at trial. Yet, plaintiff provides no explanation of how these witnesses are relevant to his case and without such information, this court will not assume that they are relevant. Indeed, in the affidavit of Stephen Lee, he states that he is unfamiliar with most of these people. According to Lee's affidavit, none of the so-called "witnesses" cited by plaintiff have ever been employed by Ecologic, performed services for Ecologic, bought product from Ecologic, or have any personal knowledge about Ecologic's business operations, business activities, or sales activities. For instance, one so-called witness is Suzanne Cagwin, Brink's girlfriend. Another witness identified by Brink is James Donohue, who was introduced to Lee by Brink as a prospective customer.

IT IS FURTHER ORDERED that defendants' motion to transfer venue is GRANT-ED. COUNT I of plaintiff's complaint is transferred to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a) while Counts II and III of plaintiff's complaint are transferred to the Northern District of Illinois pursuant to 28 U.S.C. § 1406(a).

**SO ORDERED.**