Gage, J.
 

 The question in this case is whether defendant possessed sufficient contacts with Michigan to justify the circuit court’s exercise of personal jurisdiction over him. Plaintiffs appeal as of right from the circuit court’s grant of summary disposition to defendant pursuant to MCR 2.116(C)(1). We reverse and remand.
 

 i
 

 Plaintiff W. H. Froh, Inc., was a Michigan corporation that operated in Macomb County, Michigan. Froh provided trucking services and equipment to Campbell Soup Company and Vlasic Foods, Inc. Plaintiffs William and Sharlene Neely, Nevada residents, were the sole shareholders in Froh. Plaintiffs previously resided in Michigan. .Defendant, a Wisconsin resident since May 1997, had worked for Campbell Soup and resided in Ohio during the time frame specified within plaintiffs’ complaint.
 

 Plaintiffs alleged that in 1993 defendant induced them to drop some important existing clients and devote further Froh resources toward an anticipated increase in Michigan shipping business by Campbell Soup and Vlasic. In response to plaintiffs’ expressed concerns regarding the essential nature of Froh’s
 
 *223
 
 timely receipt of payments for its services, defendant allegedly assured plaintiffs that Froh would receive weekly payments of its invoices, that ten days or less would elapse between Froh’s submission of invoices and its receipt of payment, and that Campbell Soup and Vlasie would protect and “take care of” plaintiffs. Plaintiffs averred that in December 1993 defendant reassured them that Campbell Soup’s and Vlasic’s adoptions of a third-party payor system for processing invoices would not affect Froh’s weekly receipt of payments. Plaintiffs alleged that despite their investments of additional money in Froh and redirection of Froh resources to handle the increased business of Campbell Soup and Vlasie, Froh received untimely payments that forced it to abandon operations.
 

 Defendant responded to plaintiffs’ allegations of fraud and misrepresentation by moving to dismiss their complaint pursuant to MCR 2.116(C)(1). Defendant argued that the circuit court could not exercise personal jurisdiction over him because insufficient minimum contacts linked him with Michigan. Defendant explained in an affidavit that (1) he had not lived in Michigan since 1986, (2) while he worked for Campbell Soup in 1993, no contractual relationship existed between plaintiffs and himself individually, and (3) in connection with a prior Wayne County action filed by plaintiffs against Campbell Soup and Vlasie, defendant had offered deposition testimony in Pennsylvania and Wisconsin, but never appeared in Michigan. Defendant suggested that whatever Michigan-related actions he might have taken on behalf of Campbell Soup, as its employee, could not form the basis of the circuit court’s exercise of jurisdiction
 
 *224
 
 over Mm in the instant case, in wMch plamtiffs sought to sue defendant in Ms individual capacity.
 

 Plaintiffs opposed defendant’s motion to dismiss by filing an affidavit of William Neely, who recounted the following conduct of defendant in December 1993: (1) defendant “requested that Froh render trucking and freight transportation services m MicMgan,” (2) defendant met with Neely in Roseville, MicMgan, to discuss the status of the relationsMp between Froh and Campbell Soup and Vlasic, during wMch meetmg defendant offered reassurance that Froh would receive timely payments, (3) defendant telephoned Neely, who then lived in MicMgan, to again discuss the Froh-Campbell Soup/Vlasic busmess relationsMp and reassure Neely of prompt payments, and (4) defendant corresponded with Neely, who was m MicMgan, regarding payments to Froh. Plaintiffs suggested that defendant’s actions, including Ms tortious conduct, placed Mm squarely within several different subsections of MicMgan’s long-arm personal jurisdiction statute and made reasonable the circmt court’s exercise of jurisdiction over defendant.
 

 The circmt court concluded, according to the following analysis, that defendant had not “purposefully established minimum contacts sufficient to justify the exercise of personal jurisdiction by tMs Court.”
 

 Here, defendant had, at best, attenuated contacts with the State of Michigan. In his individual capacity, defendant did not reside nor [sic] conduct business in Michigan at the time that plaintiffs’ cause of action accrued. In addition, as an employee of the Campbell Soup Company, defendant did not engage in significant activities within the State. Plaintiffs allege one or possibly two personal appearances by defendant in this State as an employee of Campbell. Furthermore, the Court finds that it does not acquire personal
 
 *225
 
 jurisdiction over defendant by virtue of his former employment with the Campbell Soup Company, especially in light of the fact that plaintiffs’ claims are directed against defendant in his individual capacity.
 

 In addition, the Court is not persuaded that plaintiffs’ cause of action arose from defendant’s activities within the State of Michigan .... Defendant’s limited contact with the State of Michigan arose in connection with his employment with the Campbell Soup Company, not in his individual capacity. Plaintiff’s [sic] cause of action seeks to recover against defendant in his individual capacity. Finally . . . the Court must consider whether defendant’s activities were substantially connected with Michigan to make the exercise of jurisdiction over defendant reasonable. As set forth above, defendant had very limited contact with the State of Michigan in his individual capacity. Furthermore, the burden on defendant is unreasonable and unfair. Defendant is a nonresident of the State of Michigan. Plaintiffs previously settled their claims with the Campbell Soup Company and failed to join defendant in said action. In light of this fact, this State’s interest in adjudicating the present dispute is minimal. . . . Moreover, defendant is no longer employed by the Campbell Soup Company.
 

 Accordingly, the court ordered the dismissal of plaintiffs’ complaint.
 

 ii
 

 Plaintiffs challenge the circuit court’s summary disposition ruling, which this Court reviews de novo. This Court likewise reviews de novo the legal question whether a court possesses personal jurisdiction over a party.
 
 Oberlies v Searchmont Resort, Inc,
 
 246 Mich App 424, 426; 633 NW2d 408 (2001). In reviewing a motion for summary disposition brought under MCR 2.116(C)(1), we consider the pleadings and documentary evidence submitted by the parties in the
 
 *226
 
 light most favorable to the nonmoving party. MCR 2.116(G)(5). The plaintiff bears the burden of establishing jurisdiction over a defendant, but need only make a prima facie showing of jurisdiction to defeat a motion for summary disposition.
 
 Oberlies, supra
 
 at 427.
 

 A personal jurisdiction analysis involves a two-fold inquiry: (1) do the defendant’s acts fall within the applicable long-arm statute, and (2) does the exercise of jurisdiction over the defendant comport with the requirements of due process.
 
 Green v Wilson,
 
 455 Mich 342, 347 (opinion by Kelly, J.), 357 (opinion by Weaver, J.); 565 NW2d 813 (1997). The actual grant of personal jurisdiction comes from legislative long-arm statutes that invest courts wdth the power to exercise personal jurisdiction. Long-arm statutes establish the nature, character, and types of contacts that must exist for purposes of exercising personal jurisdiction.
 
 Id.
 
 at 348. Michigan’s long-arm statute, MCL 600.705, authorizes the exercise of personal jurisdiction over an individual nonresident defendant under the following relevant circumstances:
 

 The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:
 

 (1) The transaction of any business within the state.
 

 (2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.
 

 
 *227
 
 Even if a defendant’s conduct places him within an enumerated category of MCL 600.705, a Michigan court may not exercise limited personal jurisdiction over the defendant unless to do so would not offend constitutional due process concerns.
 
 Green, supra
 
 at 350-351.
 

 Due process restricts permissible long-arm jurisdiction by defining the quality of contacts necessary to justify personal jurisdiction under the constitution.
 
 Id.
 
 at 348. The following principles govern whether a court’s exercise of limited personal jurisdiction satisfies constitutional due process requirements.
 

 The Due Process Clause of the Fourteenth Amendment limits the jurisdiction of state courts to enter judgments affecting the rights or interests of nonresident defendants.
 
 Kulko v California Superior Court,
 
 436 US 84, 91; 98 S Ct 1690; 56 L Ed 2d 132 (1978). As a result, a valid judgment affecting a nonresident’s rights or interests may only be entered by a court having personal jurisdiction over that defendant.
 
 Int'l Shoe Co v Washington,
 
 326 US 310, 319; 66 S Ct 154; 90 L Ed 95 (1945). A court may acquire personal jurisdiction over a nonresident when the nonresident defendant’s relationship with the forum is such that it is fair to require the defendant to appear before the court.
 
 Id.
 

 It is fair to require a defendant to appear before the court when the defendant possesses “minimum contacts” with the forum. A defendant must “have certain minimum contacts with [the forum] such that maintenance of the suit does not offend ‘traditional notions of fair play and substantial justice.’ ”
 
 Inti Shoe Co
 
 at 316. Whether sufficient minimum contacts exist between a defendant and Michigan to support exercising limited personal jurisdiction is determined by applying a three-pronged test:
 

 “First, the defendant must have purposefully availed himself of the privilege of conducting activities in Michigan, thus invoking the benefits and protections of this state’s laws. Second, the cause of action must arise from the
 
 *228
 
 defendant’s activities in the state. Third, the defendant’s activities must be substantially connected with Michigan to make the exercise of jurisdiction over the defendant reasonable.”
 
 [Mozdy v Lopez,
 
 197 Mich App 356, 359; 494 NW2d 866 (1992).]
 

 The requirement of minimum contacts serves two purposes: (1) it protects a defendant from litigating in distant or inconvenient forums, and (2) it ensures that a state does not extend its judicial power beyond the limits imposed on all states by our federal system of government.
 
 World-Wide Volkswagen Corp v Woodson,
 
 444 US 286, 292; 100 S Ct 559; 62 L Ed 2d 490 (1980). Of the two, however, the overriding purpose of due process is to protect the individual liberty interests encompassed within its scope as opposed to furthering concepts of federalism.
 
 Burger King Corp v Rudzewicz,
 
 471 US 462, 472, n 13; 105 S Ct 2174; 85 L Ed 2d 528 (1985). Nevertheless, both purposes work in tandem to give our legal system a degree of predictability that provides potential defendants with the opportunity to structure their affairs so as to provide some assurance regarding where they may be haled into court.
 
 [Jeffrey v Rapid American Corp,
 
 448 Mich 178, 185-186; 529 NW2d 644 (1995).]
 

 Because personal jurisdiction primarily depends on “reasonableness” and “fairness,” each case must turn on its own merits.
 
 Id.
 
 at 186.
 

 m
 

 Viewing the available record in the light most favorable to plaintiffs, we find that defendant’s actions placed him squarely within the reach of Michigan’s long-arm statute, specifically MCL 600.705(1). Neely averred in his affidavit that in 1993 defendant “requested that Froh render trucking and freight transportation services
 
 in Michigan."
 
 (Emphasis added.) On several different occasions during December 1993, defendant contacted Neely in Michigan to
 
 *229
 
 discuss the proposed business relationship between Froh, a Michigan corporation, and Campbell Soup and Vlasic. According to Neely, defendant communicated by visiting Neely in Michigan for a face-to-face conversation, telephoning Neely in Michigan, and corresponding with Neely in Michigan. These circumstances amply establish defendant’s “transaction of any business within the state.” MCL 600.705(1); see
 
 Sifers v Horen,
 
 385 Mich 195, 199, n 2; 188 NW2d 623 (1971) (explaining that the word “any” within MCL 600.705[1] “means just what it says. It includes ‘each’ and ‘every.’ ... It comprehends ‘the slightest.’ ”).
 

 Viewing plaintiffs’ pleadings and affidavit in the light most favorable to them, we further find that defendant did or caused “an act to be done, or consequences to occur, in the state resulting in an action for tort.” MCL 600.705(2). A plain language reading of the words comprising MCL 600.705(2) reveals that either the tortious conduct or the injury must occur in Michigan.
 
 Green, supra
 
 at 352. As we noted above, defendant made efforts to secure the employment of Froh to render trucking services in Michigan. Among other contacts, defendant visited Roseville, Michigan, to meet with Neely and clarify the contemplated business relationship between Froh and Campbell Soup and Vlasic. According to plaintiffs’ allegations, defendant knowingly advised them falsely that Campbell Soup would pay Froh on a weekly basis, intending that plaintiffs rely on the false representations, and plaintiffs reasonably forewent other business opportunities and invested money into Froh in reliance on defendant’s false assurances. When Campbell Soup later failed to make timely payments, Froh, the Michigan corporation, went out of business and the Neelys
 
 *230
 
 lost substantial money they had invested in Froh. See
 
 Mitchell v Dahlberg,
 
 215 Mich App 718, 723; 547 MW2d 74 (1996) (describing the elements of claims for fraud and misrepresentation). Because plaintiffs’ allegations substantiated that both defendant’s tor-tious conduct and the consequent injury to plaintiffs occurred in Michigan, defendant became subject to the exercise of personal jurisdiction by Michigan courts pursuant to MCL 600.705(2).
 
 [1]
 

 We conclude that plaintiffs made a prima facie showing that defendant’s actions brought him within MCL 600.705(1) and (2).
 

 IV
 

 Having found that defendant fell within the scope of the Michigan long-arm statute, we next must consider whether the exercise of personal jurisdiction over defendant would offend due process.
 

 A
 

 When undertaking a due process analysis case by case, a court should examine the defendant’s own conduct and connection with the forum to determine whether the defendant should reasonably anticipate being haled into court there. With respect to the first
 
 *231
 
 prong of the due process analysis, a defendant may submit himself to the jurisdiction of another state by reaching beyond his own state and purposefully availing himself of the privilege of exploiting the other state’s business opportunities. Jeffrey,
 
 supra
 
 at 187. “Purposeful availment” means something akin to either a deliberate undertaking to do or cause an act or thing to be done in Michigan or conduct that properly can be regarded as a prime generating cause of resulting effects in Michigan. Something more than a passive availment of Michigan opportunities must exist that gives the defendant reason to foresee being haled before a Michigan court.
 
 Khalaf v Bankers & Shippers Ins Co,
 
 404 Mich 134, 153-154; 273 NW2d 811 (1978). A defendant need not have been physically present in a state for limited personal jurisdiction to exist in that state.
 
 Jeffrey, supra
 
 at 188. .
 

 We find that defendant purposefully availed himself of the privilege of conducting activities in Michigan. Plaintiffs’ allegations reflect that defendant intentionally reached out to Michigan by repeatedly contacting the Neelys, then Michigan residents, to solicit the performance of trucking activities in Michigan by Froh, a Michigan corporation. Defendant’s actions intending to establish an ongoing relationship between his employer and Froh satisfy the purposeful availment requirement. Defendant’s contacts with Michigan placed him on notice of the reasonable possibility that he could be haled before a Michigan court.
 
 Star-brite Distributing, Inc v Excelda Mfg Co,
 
 454 Mich 302, 310; 562 NW2d 640 (1997);
 
 Khalaf, supra.
 

 B
 

 The second prong of the due process analysis requires that the cause of action must arise from the
 
 *232
 
 defendant’s activities in the state. As we explained in our discussion of the applicability of MCL 600.705(2), plaintiffs’ cause of action for fraud arose from defendant’s actions in Michigan. In attempting to negotiate a trucking service agreement to be performed in Michigan, defendant allegedly made fraudulent statements while physically present in Michigan and in correspondence and at least one telephone call to Michigan. Furthermore, the injuries occasioned by plaintiffs’ reliance on these statements, i.e., the Neelys’ loss of their investment in Froh and Froh’s cessation of business, likewise happened in Michigan. Plaintiffs’ cause of action directly relates to defendant’s alleged fraudulent statements in Michigan regarding the proposed agreement for trucking services to take place in Michigan.
 
 Starbrite, supra
 
 at 312;
 
 Jeffrey, supra
 
 at 200.
 

 c
 

 The third prong of the due process analysis considers whether the defendant’s activities were substantially connected with Michigan to make the exercise of jurisdiction over the defendant reasonable, i.e., whether Michigan’s exercise of jurisdiction comports with traditional notions of fair play and substantial justice.
 
 Starbrite, supra
 
 at 312-313;
 
 Jeffrey, supra
 
 at 188-189. In determining whether Michigan’s exercise of personal jurisdiction qualifies as reasonable,
 

 the burden on the defendant is a primary concern, but, in appropriate cases, it should be considered in light of other relevant factors, including
 

 “the forum State’s interest in adjudicating the dispute; the plaintiff’s interest in obtaining convenient and effective relief, at least when that interest is not adequately pro
 
 *233
 
 tected by the plaintiffs power to choose the forum; the interstate judicial system’s interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies
 
 ...[Starbrite, supra
 
 at 313, quoting
 
 WorldWide Volkswagen Corp, supra
 
 at 292.]
 

 To defeat jurisdiction, a defendant who purposely has directed his activities at a forum’s residents must present a compelling case that the presence of other considerations render the forum’s exercise of jurisdiction unreasonable.
 
 Starbrite, supra-, Jeffrey, supra
 
 at 189.
 

 We have found in this case that defendant purposely directed his activities at plaintiffs, who then resided in Michigan. Michigan has a substantial interest in providing effective means of redress for its citizens who allege that an out-of-state individual or entity has defrauded them.
 
 Aaronson v Lindsay & Hauer Int’l Ltd,
 
 235 Mich App 259, 267; 597 NW2d 227 (1999). Given that the parties currently reside in Nevada and Wisconsin, neither of which has any other connection with the plaintiffs’ instant cause of action, Michigan appears to be the best forum for adjudicating the case. In light of these considerations and defendant’s failure to present any compelling reasons why the circuit court’s exercise of personal jurisdiction would qualify as unreasonable, we conclude that the circuit court’s exercise of jurisdiction in this case would not offend traditional notions of fair play and substantial justice.
 

 v
 

 Defendant repeatedly suggests, and the circuit court agreed, that insufficient minimum contacts
 
 *234
 
 linked defendant to Michigan because the only actions he may have directed toward Michigan occurred in his capacity as an employee of Campbell Soup on behalf of his employer. Defendant apparently seeks to invoke the “fiduciary shield” doctrine to preclude, the circuit court’s exercise of limited personal jurisdiction over him, although we note that neither defendant nor the circuit court cited any authority supporting the application of this doctrine. Because we have found no published case by a Michigan state court addressing the fiduciary shield doctrine,
 
 [2]
 
 we take this opportunity to go on record and explicitly disavow the doctrine’s viability in Michigan.
 

 The fiduciary shield doctrine generally constitutes a state law doctrine that limits the establishment of personal jurisdiction over an individual nonresident defendant pursuant to the staté’s long-arm statute when the individual’s only contacts with the state occurred in his capacity as an employed or officer of a business entity.
 

 The “fiduciary shield” doctrine provides that personal jurisdiction over a corporate agent or employee cannot be based on the jurisdiction over the corporation for which the fiduciary acts when the fiduciary’s activities in the forum state were conducted solely as an agent or employee of the corporation. The doctrine of the fiduciary shield emerged, by way of dicta, in a series of decisions of the New York state and federal courts in the mid-1960s just as a more liberal and relaxed rule was developing in federal courts in
 
 *235
 
 favor of the application of state’s [sic] long-arm statutes themselves.
 

 Although courts previously have questioned whether the fiduciary shield doctrine exists as an element of federal due process or as a state law doctrine, it is for the most part presently viewed as a state law doctrine which functions as a tool for courts to apply in determining the scope of the state’s long-arm statutes.
 
 [Validity, construction, and application of “fiduciary shield” doctrine
 
 — modem
 
 cases,
 
 79 ALR5th 587, 607-608.]
 

 Several federal courts in Michigan, dealing with Michigan law, have rejected the applicability of the fiduciary shield doctrine. In
 
 Chicago Blower Corp v Air Systems Associates,
 
 623 F Supp 798, 800 (ED Mich, 1985), the plaintiff sued two Canadian corporations and several individual Canadian citizens who were officers of the Canadian corporations. The federal court found that the individual defendants had purposefully availed themselves of Michigan business opportunities,
 
 id.
 
 at 802, and declined to apply the fiduciary shield doctrine to insulate the individual defendants from application of Michigan’s long-arm statute.
 

 Defendants argue that even if they have “minimum contacts” with Michigan, personal jurisdiction cannot be exercised over them because they acted in their corporate, not individual capacity. This is the doctrine known variously as the “corporate/fiduciary shield” doctrine, which states that personal jurisdiction can only be exercised over those who act in their individual, not corporate, capacity. . . i Some courts have held that it is a rule of statutory construction used in interpreting the intended scope of a state’s long-arm statute.... This doctrine has been persuasively criticized as giving corporate officers jurisdictional immunity where substantive corporate law would subject them to liability- • • • Michigan courts have not applied this doctrine to its long-
 
 *236
 
 arm statute, having extended personal jurisdiction as far as is allowed by the due process constraints of the Constitution.
 

 The “fiduciary shield” doctrine was recently argued before the Supreme Court in a libel case where a reporter and editor from Florida were sued in a California court by a California plaintiff. The Court refused to allow the individual defendants to avoid jurisdiction by hiding behind the “corporate veil” of their employer.
 

 “Petitioners argue that they are not responsible for the circulation of the article in California. A reporter and an editor, they claim, have no direct economic stake in their employer’s sales in a distant State. Nor are ordinary employees able to control their employer’s marketing activity. .. .
 

 . . . Petitioners liken themselves to a welder employed in Florida who works on a boiler which subsequently explodes in California. Cases which hold that jurisdiction will be proper over the manufacturer, [citations omitted], should not be applied to the welder who has no control over and derives no direct benefit from his employer’s sales in that distant State. Petitioner’s [sic] analogy does not wash. Whatever the status of their hypothetical welder, petitioners are not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions were expressly aimed at California. . . . Under the circumstances, petitioners must ‘reasonably anticipate being haled into court there’ to answer for the truth of the statements made in their article. [Citations omitted]. An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause injury in California. Petitioners are correct that their contacts with California are not to be judged according to their employer’s activities there.
 
 On the other hand, their status as employees does not somehow insulate them from jurisdiction. Each defendant’s contacts with the forum state must be assessed individually.
 
 [Citation omitted]. In this case, petitioners are primarily partici
 
 *237
 
 pants in an alleged wrongdoing intentionally directed at a California resident, and jurisdiction over them is proper on that basis.”
 
 Calder v Jones,
 
 465 US 783, 789-790; 104 S Ct 1482; 79 L Ed 2d 804 (1984). [Emphasis added.]
 

 . . .
 
 The
 
 Calder
 
 decision has been interpreted by almost all courts as holding that where the state long-arm statute extends to the limit of due process, the exercise of jurisdiction over corporate officers who individually have minimum contacts with the forum is permissible, even if those contacts were made in their capacity as corporate officers. [Chicago Blower, supra
 
 at 802-804 (emphasis added).]
 

 The federal court concluded that it would not apply the fiduciary shield doctrine to prevent the exercise of personal jurisdiction over the individual Canadian defendants in Michigan because “Michigan courts have not adopted the fiduciary shield doctrine, and due process does not command this court to apply it in the absence of state law requirements.”
 
 Id.
 
 at 804; see also
 
 McNic Oil & Gas Co v IBEX Resources Co, LLC,
 
 23 F Supp 2d 729, 736-737 (ED Mich, 1998) (observing that Michigan courts had not adopted the fiduciary shield doctrine, and concluding that the individual defendant “may not argue that he was shielded from personal jurisdiction because his contact with the forum state was conducted in a corporate, and not an individual, capacity”);
 
 Superior Consulting Co, Inc v Walling,
 
 851 F Supp 839, 844-845 (ED Mich, 1994).
 

 We find that the federal district courts correctly rejected the fiduciary shield doctrine as a limitation on the reach of Michigan’s long-arm statute. The federal courts recognized the broad reach the Michigan Legislature intended for the state’s long-arm statute. If
 
 *238
 
 a defendant’s actions or status fit within a provision of Michigan’s long-arm statute, “jurisdiction may be extended as far as due process permits. . . . [T]he [long-arm] statute and due process share the same outer boundary.”
 
 Green, supra
 
 at 350. As noted by the federal courts, the United States Supreme Court has rejected the fiduciary shield concept as an element of the due process analysis of permissible personal jurisdiction over a nonresident defendant.
 
 Calder, supra
 
 at 789-790. Accordingly, we explicitly hold that the fiduciary shield doctrine does not constitute a valid argument against a Michigan court’s exercise of personal jurisdiction over a nonresident individual defendant who otherwise falls within the scope of Michigan’s long-arm statute.
 

 VI
 

 The circuit court erred in failing to find that plaintiffs’ allegations placed defendant within its jurisdiction pursuant to MCL 600.705(1) and (2). The circuit court further erred to the extent that it discounted in its due process analysis any Michigan-directed actions taken by defendant on behalf of his employer, and erroneously concluded that its exercise of personal jurisdiction over defendant would violate due process.
 

 We reverse the circuit court’s order granting defendant summary disposition pursuant to MCR 2.116(C)(1), and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.
 

 [1]
 

 We note that plaintiffs incorrectly suggest that MCL 600.705(5) and (6) apply to defendant. Subsection 705(5) applies when a defendant enters “a contract for services to be rendered or for materials to be furnished in the state
 
 by the
 
 defendant.” (Emphasis added.) Defendant did not agree to provide a service or furnish materials in Michigan. Subsection 705(6) applies to a defendant who acts “as a director, manager, trustee, or other officer of a corporation incorporated under the laws of, or having its principal place of business within this state.” No evidence exists that defendant’s employer, Campbell Soup, incorporated or had its principal place of business in Michigan.
 

 [2]
 

 We note that in
 
 Walter v M Walter & Co, Inc,
 
 179 Mich App 409, 411-415; 446 NW2d 507 (1989), this Court found appropriate a Michigan trial court’s exercise of limited personal jurisdiction over two nonresident, individual defendant officers of a corporation on the basis of Michigan-directed business activities by the corporation. The individual defendants in that case did not raise a fiduciary shield defense.