*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

MARK W. DOBRONSKI,

       Plaintiff-Appellant,

v

UNITED FINAL EXPENSE SERVICES, INC., and
DOUGLAS CHARLES MASSI,

       Defendants-Appellees,

and

CARLOS AYBAN BASTRADO and AMERICAN
INSURANCE BROKERS, LLC,

       Defendants.

UNPUBLISHED
April 21, 2022

No. 357057
Washtenaw Circuit Court
LC No. 20-000643-NZ

Before: BOONSTRA, P.J., and M. J. KELLY and SWARTZLE, JJ.

PER CURIAM.

This case involves violations of state and federal telemarketing laws allegedly committed by defendants United Final Expense Services, Inc., a Florida corporation, and its owner Douglas Massi, a Florida resident. Plaintiff, Mark Dobronski, sued defendants for these alleged violations and defendants argued that the trial court lacked personal jurisdiction over them because they lacked sufficient contacts in Michigan. The trial court agreed. We reverse.

## I. BACKGROUND

In April 2020, Dobronski—a Michigan resident—received four calls from telemarketers representing "Senior Benefits" or "American Senior Benefits." The calls were made to Dobronski's cell phone number, which is listed on the national do-not-call registry, and came from telephone numbers that could not be traced to the company making the calls. During the first call, Dobronski gave the telemarketer "controlled identifying information." The first call disconnected, as did a second call. The third call came from a person who identified himself as "Kevin." Kevin

explained that he had called earlier and tried to put Dobronski through to his agent, but the line had been busy. Kevin confirmed Dobronski's controlled identifying information, but then said that he would have to call back in a minute and ended the call. Kevin called back, confirmed Dobronski's controlled identifying information again, and then transferred him to a person identified as "Mark." Mark also verified Dobronski's controlled identifying information, then transferred him to a person who identified himself as "Carlos." During the conversation that followed, Dobronski learned that "Carlos" was Carlos Bastrado, the owner of American Insurance Brokers, LLC. Dobronski also learned that American Insurance Brokers's telemarketer was United Final Expense Services.

Subsequently, Dobronski filed a six-count complaint against Bastrado, American Insurance Brokers, Massi, and United Final Expense Services alleging violations of the federal Telephone Customer Protection Act of 1991, 47 USC 227 *et seq.*, Michigan's Home Solicitation Sales Act, MCL 445.111 *et seq.*, and Michigan's Telephone Companies as Common Carriers Act, MCL 484.125. As part of his complaint, Dobronski alleged, "Upon information and belief, the live agent telemarketers are employees, contractors, or agents of Defendants." In lieu of an answer, United Final Expense Services and Massi (referred to jointly hereafter as "defendants") moved for summary disposition under MCR 2.116(C)(1) on the basis that they resided in Florida and had no contacts with the State of Michigan. They asserted that Dobronski had not alleged, and could not establish, that defendants conducted activities in Michigan or had the minimum contacts in Michigan necessary for the trial court to exercise personal jurisdiction over them.

Dobronski responded, arguing that the trial court had limited personal jurisdiction over defendants because their conduct fell under Michigan's long-arm statutes and the exercise of limited personal jurisdiction over defendants met the requirements of due process. Dobronski attached to his response a purchase agreement between Bastrado and defendants under which Bastrado paid defendants $500 for 20 transfers, or leads. The purchase agreement provided, in relevant part, the following explanation for how the transfers were generated from callers— identified as "our marketer[s]"—believed to be based in India or Pakistan:

> A.  Prospect is called by our marketer and told that we have a new **affordable/low cost final expense plan** available for seniors that covers funeral and final expenses

> B. Prospect is asked if they want a quote for themselves or if it there is a spouse

> C. Prospect is asked to hold while they're connected to a licensed agent

> [D.] Call is handed off from telemarketer, marketer tells agent the name and age of client

> [E.] Agent gets a recording of all transfers.

The purchase agreement instructed Bastrado to select which states to call and urged him to select multiple states because doing so would result in more transfers. Bastrado selected four states: Indiana, Illinois, Ohio, and Michigan. Dobronski also attached a press release from the Michigan

Attorney General stating that the Attorney General had joined a national task force to combat "illegal robocalls."

Defendants asserted in reply that they did not place any calls to Dobronski and were not affiliated with the third-party call center that placed the calls. Defendants also asserted that they never called Dobronski or any other Michigan residents and did not have any business contacts in Michigan. Defendants attached to their reply an unnotarized affidavit provided by Massi asserting these same points.

The trial court held a hearing and the parties argued consistent with their briefs. At the conclusion of oral argument, the trial court stated that it was "satisfied by defendants' arguments that personal jurisdiction does not lie in this court on these claims and for the reasons stated in defendants' motion, brief and reply." The trial court issued a corresponding order granting defendants' motion for summary disposition and dismissed Dobronski's lawsuit without prejudice. This appeal followed.

## II. ANALYSIS

This Court reviews de novo a trial court's decision on a motion for summary disposition, as well as the legal questions whether a trial court possesses personal jurisdiction over a party and whether the exercise of personal jurisdiction over a nonresident "is consistent with the notions of fair play and substantial justice required by the Due Process Clause of the Fourteenth Amendment." *Yoost v Caspari*, 295 Mich App 209, 219; 813 NW2d 783 (2012). When deciding a motion for summary disposition brought under MCR 2.116(C)(1), the court must accept the plaintiff's complaint as true unless contradicted by affidavits or other evidence and "consider the pleadings and documentary evidence submitted by the parties in a light most favorable to the nonmoving party." *Id.* at 221; MCR 2.116(G)(5).

Jurisdiction over a party can be either general or limited. *Oberlies v Searchmont Resort*, 246 Mich App 424, 427; 633 NW2d 408 (2001). General jurisdiction exists "when a defendant's contacts with the forum state are of such nature and quality as to enable a court to adjudicate an action against the defendant, even when the claim at issue does not arise out of the contacts with the forum." *Id.* Defendants' contacts with Michigan are insufficient for the trial court to exercise general jurisdiction over defendants so Dobronski must rely on limited jurisdiction. When a defendant's contacts with Michigan are insufficient to allow Michigan courts to exercise general jurisdiction, "jurisdiction may be based on the defendant's specific acts or contacts with [Michigan]." *Id.* Michigan's long-arm statutes, MCL 600.705 and MCL 600.715, allow courts to take limited jurisdiction over nonresident individuals and corporations respectively. *Id.*

Determining whether the trial court may exercise limited personal jurisdiction over a nonresident individual or corporation requires a two-step analysis. *Yoost*, 295 Mich App at 222. First, the court determines whether jurisdiction is authorized by Michigan's long-arm statutes. *Id.* Second, the court determines whether the exercise of jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment, US Const, Am XIV. *Id.* "Both prongs of this analysis must be satisfied for a Michigan court to properly exercise limited personal jurisdiction over a nonresident." *Id.*

## A. LONG-ARM STATUTES

Dobronski argues that the long-arm statutes grant the trial court limited jurisdiction over defendants. MCL 600.705, provides, in relevant part, that acts creating the following relationships establish limited jurisdiction over individuals:

> (1) The transaction of any business within the state.
>
> (2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort. [MCL 600.705.]

MCL 600.715 contains almost identical language regarding limited jurisdiction over corporations except that it applies to "any act to be done" instead of "an act to be done."

Dobronski contends that defendants' conduct fell within the long-arm statutes because the calls he received were the transaction of business. He also argues that the calls he received constituted torts. Dobronski's evidence suggested that defendants acted as intermediaries between Bastrado (and his company, American Insurance Brokers) and telemarketers thought to be located in India. Bastrado paid defendants for transfers to sell a "final expense plan." As directed by the purchase agreement, Bastrado selected four states he wanted to receive transfers from: Indiana, Illinois, Ohio, and Michigan.

It is undisputed that defendants did not physically engage in any activities in Michigan. Defendants are located in Florida, Bastrado is located in Indiana, and the sale of transfers to Bastrado appears to have been accomplished electronically. Dobronski has provided no evidence suggesting that defendants personally transacted business or committed a tort in Michigan. But Michigan's long-arm statutes bring within their grasp individuals and corporations who, personally or through their agents, transact business in Michigan, commit a tort in Michigan, or cause an act to be done that results in an action for tort in Michigan. Dobronski alleged in his complaint, "Upon information and belief, the live agent telemarketers are employees, contractors, or agents of Defendants." In addition, the purchase agreement referred to the telemarketer who would call prospects in the states selected by Bastrado as "our marketer." This statement, read in the light most favorable to Dobronski, supports Dobronski's assertion about the relationship between defendants and the telemarketers in India.

Defendants argue that Massi's "affidavit" contradicts Dobronski's assertions. But Massi's "affidavit" was not notarized and, therefore, it is not a valid affidavit. See *Detroit Leasing Co v Detroit*, 269 Mich App 233, 236; 713 NW2d 269 (2005). Accordingly, defendants have not offered a valid affidavit to contradict Dobronski's assertions and, therefore, we will not consider the assertions in Massi's submission. Without that submission, defendants have not presented any information to contradict Dobronski's assertion that their agents called him and, by doing so, transacted business in Michigan. Thus, the long-arm statutes apply to defendants and the trial court had personal jurisdiction over defendants subject only to due-process limitations.

-4-

B. DUE PROCESS

Dobronski next argues that limited jurisdiction over defendants complies with due-process requirements. "A defendant must 'have certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *WH Froh, Inc, v Domanski*, 252 Mich App 220, 227; 651 NW2d 470 (2002), quoting *Int'l Shoe Co v Washington*, 326 US 310, 319; 66 S Ct 154; 90 L Ed 95 (1945) (alteration in original). Due-process analyses are case by case, and "a court should examine the defendant's own conduct and connection with the forum to determine whether the defendant should reasonably anticipate being haled into court there." *WH Froh, Inc*, 252 Mich App at 231. See also *Ford Motor Co v Montana Eighth Judicial Dist Court*, ___ US ___, ___; 141 S Ct 1017, 1024-1025; 209 L Ed 2d 225 (2021).

To determine whether the exercise of jurisdiction comports with due process, courts use the following three-part test:

> First, the defendant must have purposefully availed himself of the privilege of conducting activities in Michigan, thus invoking the benefits and protections of this state's laws. Second, the cause of action must arise from the defendant's activities in the state. Third, the defendant's activities must be substantially connected with Michigan to make the exercise of jurisdiction over the defendant reasonable. [*Id*. at 223 (quotation marks and citation omitted).]

In *Khalaf v Bankers & Shippers Ins Co*, 404 Mich, 153-154; 273 NW2d 811 (1978), our Supreme Court explained "purposeful availment" as follows:

> A "purposeful availment" is something akin either to a deliberate undertaking to do or cause an act or thing to be done in Michigan or conduct which can be properly regarded as a prime generating cause of the effects resulting in Michigan, something more than a passive availment of Michigan opportunities. The defendant will have reason to foresee being "haled before" a Michigan court.

The requirement of purposeful availment "ensures that a corporation will not be subjected to jurisdiction on the basis of random, fortuitous, or attenuated contacts." *Jeffrey v Rapid American Corp*, 448 Mich 178, 187; 529 NW2d 644 (1995).

The purchase agreement asked Bastrado to identify states from which he would like to receive transfers. The purchase agreement did not limit which states Bastrado could choose and actually stated that it was better for Bastrado to select multiple states. From this menu of fifty options, Bastrado chose four: Indiana, Illinois, Ohio, and Michigan. Accordingly, based on the plain language of the purchase agreement, defendants offered to provide Bastrado transfers from calls placed in Michigan, among other states. Bastrado's call with Dobronski would not have occurred absent this agreement, and we must view Bastrado as defendants' agent given the procedural posture of this case. Thus, defendants caused the complained-of calls. This action was a deliberate undertaking and gave defendants reason to foresee that they could be haled before Michigan courts. Accordingly, the first part of the due-process test has been met.

The second part of the due-process test looks at whether Dobronski's causes of action arise from defendants' activities in the state. Defendants did not call Dobronski directly. But their alleged agents did call Dobronski while he was present in Michigan. Dobronski's causes of action arise from those calls. Consequently, Dobronski's causes of action arise from activities in Michigan, fulfilling the second part of the due-process test.

The third prong of the due-process test requires defendants' activities to be substantially connected with Michigan so as to make the exercise of jurisdiction over defendants reasonable. See *Yoost*, 295 Mich App at 223. This factor balances the burden on the defendant against

> the forum State's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief, at least when that interest is not adequately protected by the plaintiff's power to choose the forum; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies. [*WH Froh, Inc*, 252 Mich App at 232-233 (cleaned up).]

Additionally, "a defendant who purposely has directed his activities at a forum's residents must present a compelling case that the presence of other considerations render the forum's exercise of jurisdiction unreasonable." *WH Froh, Inc*, 252 Mich App at 233.

Michigan has an interest in preventing its residents from receiving illegal telemarketing calls. The Legislature has passed multiple laws on the issue demonstrating its interest in the area. Additionally, the Attorney General has joined a national taskforce focused on the issue of illegal telemarketing calls. Michigan courts are best suited to address these issues rather than defendants' home forum of Florida because many of Dobronski's claims require the interpretation of Michigan law. Additionally, as addressed earlier, defendants purposely directed activities at Dobronski, a Michigan resident, through their agents' actions. Each of these factors support litigating this case in Michigan, and defendants have not presented a compelling reason to do otherwise. Thus, all three factors of the due-process test support exercising personal jurisdiction over defendants.

## III. CONCLUSION

For the reasons stated in this opinion, we reverse the trial court's order granting summary disposition to defendants and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. Dobronski, as the prevailing party, may tax costs under MCR 7.219.

/s/ Mark T. Boonstra
/s/ Michael J. Kelly
/s/ Brock A. Swartzle